Number 182244 Craig R. Jalbert v. Zurich Services Corporation et al. Good morning, Your Honor. May it please the Court, my name is Andrew Ryan. I represent the plaintiff appellant, Craig Jalbert, the trustee of the F2 Liquidating Trust. I would like to reserve four minutes for rebuttal. Yes. An SEC formal order of investigation is not incontrovertible proof that an enforcement action against the person or company named in that order is a reasonable possibility. SEC investigations are distinct from enforcement actions. Procedurally, a formal order of investigation is how the SEC opens a confidential investigation into possible violations of the securities laws. Substantively, the formal order of investigation has two limited purposes. First, to define the scope of the investigation, and second, to authorize the issuance of subpoenas. In this case, the subpoenas issued pursuant to the formal order state specifically that the SEC's investigation, quote, should not be construed as an indication that any violation of law has occurred. Are you familiar with a recent case that we decided involved a UBS? Yes, Your Honor. In the UBS, if you're referring to the UBS v. Excel specialty case that I believe, Your Honor. Yes, that's why I remember it. Yes, sir. In that case concerned, the specific litigation exclusion and the effects of the specific litigation exclusion as it related to UBS's alleged fraud. In that instance, what had occurred was that prior to the issuance of the policy, UBS had been investigated by the SEC for the way that it had marketed certain closed-end funds, and that investigation then spawned civil litigation. Following that, UBS applied for a policy of insurance with Excel, and Excel specifically contracted into the policy that it would exclude coverage for any claim arising out of or relating to those prior investigations. Why isn't this the same or similar? It's neither, Your Honor, because of the timing here is unique among this Court's cases that have addressed SEC orders of investigations. Here what happened was that on October 2nd of 2013, F-squared received a subpoena for information from the SEC. That is the subpoena that contains the disclaimer that I just mentioned to the Court. That subpoena is issued on October 2nd but does not attach the formal order of investigation. On October 3rd, the very next day, is when the Zurich and Excel policies join the risk. There's now $10 million of extra insurance through Zurich and Excel. It's not until two weeks after Zurich and Excel are on the risk that F-squared receives a copy of the formal order of investigation. That's on October 18th of 2013. That's the first time that the insurer could report any information about a covered claim to the insurers because this policy does not cover a subpoena. That's an admitted fact by both sides. It only covers an SEC investigation that's initiated by a formal order of investigation. And a claims-made policy, an insurer cannot report something that it doesn't know. And here we didn't know that there was a formal order of investigation that described wrongful acts by F-squared until October 18th, after the policy period. What's happening here... The September 23rd order wasn't notified to? No, Your Honor. That was a confidential and non-public order that was not given to F-squared. Following the issuance of the subpoena on October 3rd, F-squared requested a copy of the order, which it then received on October 18th. That was the first time that F-squared had ever received a copy of the formal order of investigation. That's at page 1112 of the appendix. I don't understand. Is that the first time it received actual notice or written notice? Both, Your Honor. There's no evidence in the record that SEC... I'm sorry. There's no evidence in the record that F-squared had any prior unwritten or oral notice of the formal order of investigation prior to October 18th. There were only the subpoenas. And the subpoenas that had been issued were not covered by the policy. What the insurance company is attempting to do here is argue that the deemed-made clause in the policy requires us to imagine that the claim arose on a date different than when F-squared received it, that instead of it arising on October 18th when we received it, it arose on September 23rd when it was privately and confidentially entered by the SEC. For that to be the case, there are three requirements that have to be met in the deemed-made clause. The insured has to be identified by name in an order of investigation as someone against whom a civil, criminal, regulatory, or administrative proceeding may be brought. We don't question that F-squared is identified by name. We don't question that they are identified by name in the formal order of investigation. What we question is whether or not the formal order of investigation indicates that F-squared is someone against whom an enforcement proceeding may be brought. That's what the district court held below, but that decision is inconsistent with three important cases, the first of which being the Supreme Court's case, SEC v. O'Brien. In SEC v. O'Brien, the Supreme Court held that identifying the targets of SEC investigations would be a most obvious difficulty even for the courts and for the SEC. The reason for that is the SEC does not know who the targets of its investigation will be until it starts investigating. The Supreme Court in SEC v. O'Brien also held that the purposes of the formal order are the two limited purposes that I described, define the scope of the investigation, and authorize the issuance of subpoenas. The insurance companies are arguing that the purpose of the formal order is to identify a target of the investigation and identify F-squared as that target. That's on page 22 of their brief. That could not be more wrong. The SEC enforcement manual, section 3.3.2, plainly states that the SEC investigative process does not have targets. That's the same thing that the Supreme Court said in SEC v. O'Brien. I thought the standard you wanted us to assess this under is whether there was a reasonable possibility. Yes, Your Honor, that is the standard. How would there not be a reasonable possibility, given that F-squared is named? Because the formal order does not give any indication, one way or the other, whether an enforcement proceeding against any party named therein is possible. I understand that part. How does that not meet the reasonable possibility standard? Because reasonable possibility is distinct from mere possibility. What the court is mentioning is a kind of common-sense approach of, well, if one is being investigated, you have to expect that enforcement is a possibility that could follow an investigation. That is a mere possibility requirement, not a reasonable possibility requirement. What's unreasonable about it? What's unreasonable about it is that the investigation doesn't give any indication, one way or another, whether or not there will be an enforcement action. So, for example, as this court held... So it can't possibly exclude possibility. No, the formal order does not exclude the possibility of an enforcement proceeding. It also doesn't indicate that an enforcement proceeding is likely to any degree. That's not the question. The language you want us to use is reasonable possibility, not likely. Yes, and our position is just simply that the formal order does not say one way or the other what degree of possibility, if any, there is that an enforcement proceeding could follow the formal order of investigation. And in that way, it's very similar to the court's decision in the Corregis case. So in the Center for Blood Research v. Corregis, this court addressed an analogous situation where the U.S. Attorney's Office for Massachusetts sent an investigative subpoena to a company seeking to investigate potential federal health care crimes. That investigation the court held was not something that an objectively reasonable insurer would view as connected to an enforcement proceeding. The court held that an objectively reasonable insurer would conclude that the investigation was limited for three reasons, all of which are present here. First, that the investigating AUSA was merely gathering information and investigating. That's the same thing that the SEC is doing through a formal order of investigation as the Supreme Court stated in SEC v. O'Brien. Second, this court held that the AUSA could not make an adjudication of any relief and indeed could not adjudicate anything at all. That is, again, exactly the same thing that was said in SEC v. O'Brien, where on page 742 the court explicitly states that an SEC investigation into possible violations of the securities laws adjudicates no legal rights. And third, the court in Corregis held that the insurer would realize that any civil or criminal proceeding would have had to have been pursued in a different form. Did the formal order include information about violations that the SEC had reason to believe might have been incurred? The formal order listed that the SEC had information that tended to show possible violations of various aspects of the securities laws. By whom? By five entities that are F-squared related and two entities that were publicly traded companies. And that connection of being named in the formal order, however, doesn't address the question of whether or not F-squared is going to be the subject of the enforcement proceeding. The reason being, Your Honor, and I realize that the defense approach has some common sense appeal to it. One who's being investigated will think... I'm just trying to use your standard, which is reasonable possibility. Well, in the reasonable possibility standard, what we look at are all the circumstances that are known at the time of receiving this particular document. So what you'd look at is you'd look at not just the text of the formal order of the investigation, but you would also look at the subpoena. The subpoena is issued pursuant to the formal order of investigation. The cover letter to the subpoena says that it shall not be construed as an indication that there has been any violation of the law. That's at page 25 of our addendum. That's in every subpoena that's issued pursuant to this formal order, which means there is evidence in the record to show that enforcement proceeding is unlikely, because without any law that has been broken, there is nothing to enforce. Thank you. Thank you, Your Honors. May it please the Court, Andrew Margulies arguing on behalf of the appellees, Zurich, and Excel. And as Your Honor stated, the standard is a reasonable possibility. Does this formal order indicate a reasonable possibility? And Your Honor asked the question, does it identify the potential violations? There are nine detailed paragraphs over three pages saying that the SEC has information that tends to show that Escort violated the securities laws. And that's the purpose of the investigation. The purpose of this policy is to give coverage for investigations. The appellant's argument would eviscerate that coverage. The only reason that the appellant received the formal order is because they asked the SEC for it. The cost of the investigation comes in not responding to the formal order, but responding to the subpoenas. The formal order is the document that gives the SEC power to issue subpoenas. And they issued a subpoena on October 2nd, the day before our policies. That's the cost of the investigation. There is no requirement that the subject asks for a copy of the formal order. What would happen in a situation where an insured was spending millions of dollars responding to subpoenas by the SEC, but just never happened to ask for a copy of the formal order? The insured here is actually arguing that that coverage would not exist. The policy covers investigations. Whether they have the formal order or not is irrelevant. The cost comes in responding to the subpoenas. Insured subjects do not have to ask for the formal order. They can or they don't have to. But the cost is responding here. But under the definition of claim, the triggering event is the formal order, I take it. That's your argument. The triggering event is the issuance of the formal order that starts the investigation. I have a question about that, though. Another thing that constitutes a claim is a demand letter. That obviously can't trigger anything until it's received. That's right. Why would these be read differently? One, you need notice. The other, you don't. Because the policy governs that specifically. It lists the kinds of claims and it lists when they're going to be deemed made. For a written demand, it's deemed made on receipt. And why? Because an insurer doesn't have to incur cost until it gets the demand. That's what the policy covers, the cost of responding to it. For a lawsuit, it's upon service of the lawsuit. Because we all know that a lawsuit can be filed and not served for 120 days or maybe even never served. But the insurer does not have to respond to the lawsuit until it's served. That's what triggers the cost. That's what the coverage is for. Here, the policy covers cost of an investigation. The giving of the formal order to the insured doesn't trigger any cost. It's getting the subpoenas that trigger the cost. The formal order, by practice of the SEC, is not given to the insured. It's only given if the subject asks for it. So the cost has already been incurred. What happens in this case, like I said, if an insured goes through an investigation for a year, spends $10 million, and never bothered to ask for a copy of the formal order? Is this insured actually saying that none of that $10 million would be covered just because the insured decided not to ask for a copy of the order? So that's why the policy clearly governs what type of claim and when it's deemed made based on what would trigger the cost for the insured. The policy is designed to give broad coverage. Anytime there's something the insured might have to incur cost for, that's what we cover. This is a rare instance where the insured is actually arguing, No, no, we didn't ask for it. We waited six months before we asked for the formal order, so just don't worry about the first six months of our cost. We'll eat that. This is a very rare situation where the insured is actually asking for less coverage. And what's important to keep in mind here is that there were two policy periods. The insured, F-squared, had two policies in the prior year and two extra policies in the later year. They submitted to the carriers, and the carriers accepted it under the prior year, under 2012-2013, because they went through the analysis and said, There's a formal order. There's a subpoena issued. It identified the insured. We're going to cover it. And they had no motive. It was the same insurer in both years. They were the primary $5 million. So they had no motive not to do an honest analysis of why, of what policy period it was in. They submitted it, and they determined it was in the prior policy period, and they accepted it. I thought in their reply brief they say that that wasn't clear. Oh, that was very clear. It's in the record. In their letter accepting the claim, they say this is a claim during the 2012-2013 policy. We acknowledge that. When they paid their money, they sent F-squared a letter saying, We'd like you to acknowledge that when we pay this, we are exhausting our limits under our 2012-2013 policy. How can they exhaust the limits of that policy if they're not paying under that policy? That was clear. And the other thing that the appellant said that was interesting in debriefing the argument here is they didn't know that they had a formal order to tender to their insurance companies until they received the formal order. Well, that's not true, because when they got the subpoena on October 2nd, which was sent to their counsel, it specifically said, the subpoena specifically says, This subpoena is being issued pursuant to a formal order of investigation that was commenced pursuant to several statutes. And one of them is section 42A of the Investment Company Act. And that section specifically says that one of the purposes of the investigation is to determine whether to bring an enforcement proceeding. Of course it's possible that an enforcement proceeding could happen. The SEC does not do investigations for statistical reasons or intellectual exercises. They issued a formal order saying, We have information that tends to show that F-squared violated securities laws, and we're investigating that. Anybody who gets that subpoena and reads that statute will know that a possibility is that the SEC would find information that validates their allegations and says, Now we're going to bring an enforcement proceeding. That's the whole purpose to an investigation. The trustee also said in his brief another very interesting thing. Until they got the formal order, they couldn't hire counsel, and they couldn't submit the formal order to their insurance companies. Both are factually contradicted by the record. They couldn't hire counsel until they got the formal order is not true, because on October 2nd, more than two weeks before they had the formal order, when the subpoena was issued, the subpoena was sent directly to F-squared's counsel. So of course they hired counsel. They didn't need the formal order to hire counsel. In fact, what's in the record is that F-squared had been involved with the SEC since July of 2013. The SEC had been requesting documents since then, and that's why they had counsel, and that's in the record. The other statement that was not true was that they needed the formal order to tender to their insurance companies, because when they got the formal order and two weeks later tendered notice to their insurance companies, they didn't send the formal order. They only sent the subpoenas. So having the formal order doesn't prevent them from giving notice, because they didn't send it to us anyway. The other thing I wanted to point out is that with respect to the Center for Blood Research case that counsel cited, too, that's a very distinct holding and a very distinct case. In that case, the definition of claim was a proceeding in which the insured can be subjected to binding adjudication. And this court simply held that you can't be subjected to binding adjudication in response to a subpoena. So the subpoena did not meet the definition of a claim. That's a very different situation. Our policy covers investigations. The investigation started in September of 2013 when the order was issued, and then the subpoena was served before our policies went into effect pursuant to that investigation. And it's very similar to the case, as Thompson, you're aware, of biochemics. Biochemics versus AFIS involved a situation where you had an SEC formal order investigation and some subpoenas in one policy period, and then in a later policy period there were additional subpoenas and then an enforcement action. And the issue was whether the later subpoenas and enforcement actions were part of the same claim that was started by the SEC formal order the year before. And the holding was yes, because that SEC formal order was a claim because it alleged wrongful acts. And the definition of wrongful acts there is the same definition of wrongful acts here, an actual or alleged act. And since the formal order alleged violations of the securities laws, it stated wrongful acts and therefore was a claim as soon as that formal order was issued. And that's what we have here. A formal order was issued weeks before our policy started, and before our policy period started, the insured received a subpoena that specifically referenced that formal order. So that's why it was accepted by the prior year's insurance company. That's why they paid their limits, and that's why Esquire signed the acknowledgement acknowledging that those limits were being paid under the prior policy year. Now, of course, they wanted it in the second year because they went out and bought two more insurance policies for $10 million. But the fact is the investigation started before our policy incepted. The subpoena was served before our policy incepted, and the insurance company who was on the risk before us accepted coverage. That's really the end. It starts and ends with the policy language and the reasonable possibility. Was there a reasonable possibility that that formal order indicated that an enforcement action was possible? And, of course, it did. I have the rest of my papers, if anything else. Thank you. Your Honor, I'd like to address three points, if I could. First, this question of receiving the subpoena prior to the formal order. I would direct the Court to page 31 of the insurance brief. Quote, the subpoena was not a claim as defined by the Zurich and Excel policies. Receiving the subpoena on October 2nd is not the same thing as receiving a claim. It's an undisputed fact. Did the subpoena make reference to the order? The subpoena said that it was being issued pursuant to an investigation. It said that it was being issued pursuant to a reference investigation, and the red line of the letter said NRA F-squared Investments, either Inc. or LLC. I forget which one. It did not say that the investigation was of F-squared or contained any allegations that F-squared violated the law. Instead, as I've mentioned, the subpoena contained a disclaimer that F-squared had not violated the law. This idea that the costs that are being sought to be recovered here are those that relate to responding to the subpoena is a damageous question. It doesn't have anything to do with the deemed-made clause. It's undisputed. We do not get the claim until October 18th. We don't get it until after the policy period starts. Did you answer Judge DeWay's question? I believe I did, Your Honor. Did it reference the order, the subpoena? That was very specific. Yes, Your Honor. The subpoena stated, the cover letter of the subpoena stated that it was being issued pursuant to an order of investigation. It did not give the name of the order. The red line of the letter had the name NRA F-squared Investments, either Inc. or LLC. It did not say that there was an investigation being done about F-squared. It did not say that F-squared was the target or subject of any such investigation. And it didn't contain any allegations that F-squared had violated the law. What you have here is the damageous question of, they want to try to say some costs related to the subpoena before the formal order received are to be excluded. That doesn't have anything to do with the deemed-made clause. That would be a fact issue were the case to be remanded. Second, to return to Judge Howard's question about reasonable possibility, what we ask the court to do is look at what has happened in the other cases that both sides have cited. So in the Liberty Insurance v. Gibbs case out of the First Circuit and in the Christianic case out of the Second Circuit, what was required was a jury trial to determine whether or not a possibility was in fact reasonable because that is a fact issue, whether or not something would be reasonable under the circumstances. And here there is evidence that creates a conflict as to that fact issue. There is the formal order describing potential violations of the securities laws by F-squared. But there is also the subpoenas issued pursuant to that formal order saying that they shouldn't be taken as any indication that the law has been violated. By entering the summary judgment order below and the defense argument here is that the formal order should be taken as an indication that the laws have been violated. That's simply not what the SEC says. It's not what the Supreme Court said when it interpreted a formal order of investigation. Finally, Judge Thompson, I wanted to address the Biochemics case. The Biochemics case is not on par with what we have here. In Biochemics, there was a seven- to nine-month period between the receipt of not only the subpoenas but also the formal order before notice was ever tendered to the carrier. And it was during that nine-month period that the carriers came on the risk. Here we have a virtual stitch in time. We have a subpoena on October 2 that does not include a formal order. It is not covered by the policy. It gives us no basis to demand coverage. And it isn't until October 3 when the policies come on board and then the two weeks that follow that that we finally learn of a formal order that would be subject to coverage under the policy. In that circumstance, this should be treated as a typical claims-made insurance policy. We can't report what we don't know. And in that instance, the insurance is entitled to coverage even if something happened before the policy incepted. Perfect timing. We're going to take a quick break. All rise. We'll be right back. Good to see you. When we return, we're going to come back to Olivera versus Barr.